UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| **IN RE BAYCOL PRODUCTS LITIGATION** | : | MDL No. 1431 |
| | : | (MJD) |
| **This Document Relates to:** | : | |
| *Joseph R. Elich v. Bayer Corporation, et. al.* | : | Case No. 02-0434 |
| *Loren Kofsky v. Bayer Corporation, et al.* | : | Case No. 02-0141 |
| | : | |

# PLAINTIFF, LOREN KOFSKY'S, MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT, BAYER CORPORATION'S MOTION FOR DISCOVERY SANCTIONS

Plaintiff, Loren Kofsky, respectfully submits the following memorandum of points and authorities in support of his opposition to Defendant, Bayer Corporation's motion fo discovery sanctions:

## I.

## INTRODUCTION

This is a consumer-based class action lawsuit seeking recovery on behalf of Plaintiff and all other persons similarly situated in the State of California and United States who purchased and/or used the prescription drug Baycol from January 1, 1997 to August 8, 2001. Plaintiff's Complaint essentially alleges violations of California's Business & Professions Code and Consumer Legal Remedy Act, arising from statements and advertisements made by Bayer with respect to the safety and efficacy of its recalled prescription drug, Baycol.[1] The case was initially filed in the Superior Court of the state of California, County of San Diego, along with a companion case, *Joseph Elich v. Bayer Corporation, et al.* Both cases were removed to the United States District Court

[1] The Complaint expressly disclaims class-wide recovery for personal injuries attributable to Baycol consumption. [Complaint ¶8].

for the Southern District of California and thereafter transferred into MDL 1431.

Plaintiff has fully participated in discovery, timely filed and served all required documents and expert reports, and has made available for deposition each witness Bayer has sought to depose. From the date of this Court's Transfer Order forward, Plaintiff has fully complied with every Order of this Court, including PTO 149.

Thus far during discovery, counsel for both parties have been courteous, professional, and able to work through scheduling conflicts and move forward with the discovery process without resorting to court intervention. This is so even though Bayer has utilized a practice of unilaterally noticing depositions and then relying on Plaintiff's counsel to take the laboring oar of contacting witnesses, obtaining dates of availability, deposition locations, etc., and relaying that information back to Bayer for final scheduling. Typically, after receiving a deposition notice from Bayer and thereafter handling the logistics, Plaintiff's counsel would memorialize the deposition schedule in an email such as the following:

*******************************************

July 14, 2006

Ken:

Thank you for calling me late this afternoon in response to my e-mail and voice mail messages. This is intended to confirm our discussion with respect to deposition rescheduling. We will revisit the issues we discussed concerning the propriety of these depositions, the need for protective orders, etc., next week.

The depositions are now presently set as follows:

Joan Kofsky – July 25, 10:00 a.m. -- Your office

Larry Kofsky – July 25, 2:00 p.m. -- Your office

Steven Elich – July 25, 5:00 p.m. -- Your office

Norma Elich – July 26, 10:00 a.m -- Our office (may need to change location)

Dr. Deemer – July 26, 1:00 p.m. -- Oceanside (may need to change location)

Rose Straka – July 27, 10:00 a.m. -- Sacramento

Colette King -- tba

My office will contact each deponent and clear times and dates right away. Please contact James Frantz or Howard Ost at my office to discuss this further on Monday.

Thanks again for your courtesies.

Sincerely,
Sean M. Foldenauer, Esq.

[Please see Plaintiff's Exhibit A]

*******************************************

As will be established, below, Bayer had no need for filing the instant motion. All percipient witness depositions have been completed. All that remained was short depositions of Mr. Elich's and Mr. Kofsky's treating physicians, whom Bayer did not depose during the period of fact witnesses. The depositions were unilaterally noticed by Bayer, first in the middle of Plaintiff's counsel's family vacation. The depositions were rescheduled (after the PTO 149 period) and then postponed *at Bayer's request*. New dates were selected and the depositions were set to go forward, but three days prior Plaintiff's counsel received notice from the doctors that they needed a short postponement to obtain and review their patient's medical records. Plaintiff's counsel immediately forwarded this information to Bayer and requested that the depositions be moved. Surprisingly, rather than working together to solve a very simple scheduling problem, Bayer's attorneys decided to spin the facts to file a motion seeking the most drastic of remedies, "doomsday sanctions."

Bayer's motion with respect to dismissal and an award of attorneys' fees and costs is without merit. Plaintiff requests that it be denied.

## II.

## FACTUAL BACKGROUND

On November 14, 2006, Bayer served its motion, claiming Plaintiff violated PTO 149 by failing to produce for deposition their case-specific experts, Neil Levine, M.D. (Elich) and Michael

Maywood (Kofsky). Bayer's motion fails to inform the Court, however, that the parties agreed that these two depositions would be taken after the September 29th cut-off date established by PTO 149. In fact, Bayer's own amended deposition notices set the depositions for October 13th and November 6th, respectively. [See Bayer's Exhibits 4, 8]

Bayer also claims that it "attempted to meet and confer on at least seven different occasions regarding dates for the deposition of these witnesses..." While it is true that Plaintiff's counsel and Bayer's counsel discussed the time, date and location of these depositions on numerous occasions, it is false for Bayer to say that the parties "met and conferred" seven times prior to Bayer's filing of this motion. In fact, Bayer's filing of this motion was an unexpected, surprise. Plaintiff at all times has agreed to produce these two doctors for deposition. When the doctors advised they needed additional time to locate and review records, Bayer's attorneys attempted to twist it into an opportunity to file a dispositive motion.

The custom and practice of Bayer has been to notice all depositions for a time, date and location chosen unilaterally by Bayer. Then, Plaintiff's counsel would contact the witnesses, confirm their availability and reset the times, dates and locations. On occasion, scheduling conflicts would arise and the depositions would be postponed or rescheduled. This is the very nature of litigation. It occurred in this case several times but counsel succeeded in lining up and taking all fact witness depositions.

<u>Depositions of Doctors Levine and Maywood</u>:

On September 14th, Bayer unilaterally scheduled the depositions of doctors Levine and Maywood to take place on short notice – September 25th and 26th. Both deposition notices included a lengthy document request, which required the doctors to retrieve their patient's records from off-site storage facilities. [See, Bayer's Exhibits 1, 2.]

The depositions did not go forward on the September dates initially set by Bayer, first because

Plaintiff's counsel had a planned family vacation in Maui, Hawaii. Bayer agreed to move the depositions for this reason. The parties also agreed that the depositions would take place after the September 29, 2006 cut-off set forth in PTO 149. Bayer next re-noticed the depositions to take place on October 13th. At this same time, the parties began discussing the scope of each the doctors' testimony. The parties decided that, since this is an *advertising class action case* that specifically excludes recovery for personal injuries, the doctors' deposition testimony would be, to some extent, limited. The parties never came to a complete agreement in this regard, however. Bayer's attorneys prepared and proposed two differing stipulations in this regard. [See, Bayer's Exhibits 2, 5] However, the language Bayer proposed was rejected for being more broad than the parties had discussed.

On October 16, 2006, Plaintiff's counsel confirmed this, writing:

*********************************************

October 16, 2006

Ken:

We have reviewed your letter and proposed stipulations concerning treating physicians, Maywood and Levine. We need to discuss the stipulation language a bit further. It appears to misstate that which we agreed. We have always stated that we are not seeking to recover monetary damages for personal injuries in these cases, as they are class-based advertising cases. The Complaint itself specifically excludes personal injuries from the class description allegations. Nonetheless, we timely provided case-specific expert reports from Drs. Maywood and Levine. They are not retained experts designated to opine as to causation of injury to support a personal injury claims. But they are percipient experts to the extent they have opinions with respect to their care, treatment, diagnoses, prognoses, etc., of their patients. The stipulations should to reflect this, we believe.

Lastly, to my knowledge, we have satisfied all of the Court's Pre-Trial Orders. Please call tomorrow so we can discuss this matter further and get these depositions back on track.

Sincerely,

Sean M. Foldenauer, Esq.

FRANTZ, TOWNSEND & FOLDENAUER LLP

[Please see Plaintiff's Exhibit B]

*********************************************

A new date of November 6th was then chosen for the depositions. On November 3rd, however, Plaintiff's counsel learned that the doctors had still not been able to obtain and review all of their patient's medical records because they were still in the process of being retrieved from off-site storage facilities. Upon learning this, Plaintiff's counsel immediately left messages and wrote to Bayer's attorney, Ken Friedman, advising of the situation, as follows:

*********************************************

November 3, 2006

Ken:

We were unable to lock-in doctors Maywood and Levine for Deposition on Monday, Nov. 6. I am informed they are still in the process of obtaining their records from storage. I am working on obtaining dates certain within the next two weeks so we may complete these depositions. I will call today to confirm the above.

Sincerely,
Sean M. Foldenauer, Esq.
FRANTZ, TOWNSEND & FOLDENAUER LLP

[Please see Plaintiff's Exhibit C]

*********************************************

Although the issue with doctors Levine and Maywood was in reality just a simple rescheduling matter of which, as before, the parties could have easily remedied themselves, Mr. Friedman responded as follows:

*********************************************

November 3, 2006

As you have made it clear that you do not intend to produce Drs. Levine and

Maywood for deposition on Monday, November 6, we will not appear on Monday. This was the last day we had agreed to extend the deadline to produce the doctors. Accordingly, we intend to file motions to dismiss the Elich and Kofsky actions for failure to comply with PTO 149.
Ken Friedman

Sidley Austin LLP

[Please see Plaintiff's Exhibit D]

*********************************************

Plaintiff's counsel responded:

*********************************************

November 3, 2006

Ken:

Let's talk about this on Monday. This is a simple scheduling matter. These are busy doctors that were not available on the dates you unilaterally noticed. Also, they had to locate and order dated medical records from storage to review. I believe we are in compliance with PTO 149, and that we should work together to make the depositions happen rather than trouble the judge.

Sincerely,

Sean M. Foldenauer, Esq.
FRANTZ, TOWNSEND & FOLDENAUER LLP

[Please see Plaintiff's Exhibit E]

*********************************************

Plaintiff's counsel then obtained new deposition dates from the doctors and provided them to Mr. Friedman, in the following email:

*********************************************

November 15, 2006

Ken:

We have received confirmation of deposition dates from Drs. Maywood and Levine. Dr. Maywood is available on December 1, at 1:00 p.m. at his office, located at 9850 Gennesse Avenue, Suite 350, La Jolla, CA. Dr. Levine provided multiple dates.

They are: November 28 and December 5, 7, 12, 14, 19 and 21. His schedule works best either at 12:00 noon or 4:00 pm, at his office located at 910 Sycamore, Suite 270, Vista, CA.

These were difficult to pin down, so we thank you very much for your patience. Please advise as to which dates best fit your schedule.

Sincerely,

Sean M. Foldenauer, Esq.
FRANTZ, TOWNSEND & FOLDENAUER LLP

[Please see Plaintiff's Exhibit F]

**********************************************

Rather than picking convenient dates, taking the two depositions and completing discovery, Bayer's counsel waited six days and then wrote the following:

**********************************************

November 21, 2006

Sean, As you know, we have a motion to dismiss pending in these cases for failure to comply with PTO 149. We do not see any reason to depose Drs. Levine or Maywood unless the judge denies the motion.

Ken Friedman

Sidley Austin LLP

[Please see Plaintiff's Exhibit G]

**********************************************

Plaintiff requests that the Court deny Bayer's motion and order that the two remaining depositions go forward on reasonable notice.

**III.**

**ARGUMENT**

A. Dismissal Sanctions are Harsh and Unwarranted:

Bayer correctly states that Federal Rule of Civil Procedure 37 confers broad discretion to the court to enforce discovery orders. The most drastic of which is set forth in Rule 37(b)(2)(C), which

allows a court to issue an order "striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

The factors guiding a district court's discretion in determining whether violation of a rule governing discovery is justified or harmless, so as to preclude sanction of exclusion, are: (1) prejudice or surprise to party against whom evidence is offered; (2) ability of party to cure prejudice; (3) likelihood of disruption to trial; and (4) bad faith or willfulness involved in not disclosing evidence at an earlier date." [*David v. Caterpillar, Inc.*, C.A.7 (Ill.) 2003, 324 F.3d 851] Here, we have none of these elements. There is no known prejudice or surprise. The matter can readily be cured by setting and taking the depositions. There will be no disruption to trial and there has been no bad faith or willfulness.

Case law also holds that, the power to impose sanctions is one to be exercised discreetly and never when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of noncomplying party. [*Wilson v. Volkswagen of America, Inc.*, C.A.4 (Va.) 1977, 561 F.2d 494, certiorari denied 98 S.Ct. 744, 434 U.S. 1020, 54 L.Ed.2d 768, on remand 445 F.Supp. 1368]

Dismissal with prejudice is a harsh remedy to be used only in extreme situations, and then only when a court finds willfulness, bad faith, or any fault on the part of the prospective deponent." [*Valentine v. Museum of Modern Art,* 29 F.3d 47 (2d Cir.1994) (quoting *Bobal v. Rensselaer Polytechnic Institute,* 916 F.2d 759, 764 (2d Cir.1990))]

Dismissal sanctions are unwarranted under the circumstances. Willful violations and bad faith tactics are simply not at issue here, where a litigant has agreed to produce deponents for deposition and comply with all discovery orders, but has asked only for a short postponement of two doctors depositions for good cause.

B. Monetary Sanctions are Inappropriate:

It is clear from the record that the parties agreed to extend the period set forth in PTO 149 to take the depositions of doctors Levine and Maywood. In reliance on this agreement, Bayer served amended notices of deposition for October 13th and November 6th. Bayer, not Plaintiff, took the October 13th deposition off calendar while the parties were attempting to negotiate a stipulation to limit the testimony of these witnesses.

Plaintiff agreed to produce the witnesses and, in fact, provided Bayer with specific times, dates and locations for the depositions. Had Bayer simply agreed to Plaintiff's request for a short postponement, which would not have resulted in any prejudice, there would have been no need to file this motion. Likewise, neither Bayer nor Plaintiff would have incurred attorneys' fees and costs in filing and opposing this motion.

Bayer's request for attorneys' fees and costs should also be denied.

## IV.

## CONCLUSION

For all the foregoing reasons, Plaintiff requests that the Court deny Bayer's motion for sanctions in its entirety.

Respectfully submitted,

FRANTZ, TOWNSEND & FOLDENAUER, LLP

Dated: 12/1/06

Sean M. Foldenauer,
Attorneys for Plaintiff