**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD/SRN) |
| This Document Relates to: | : | |
| *Loren Kofsky v. Bayer AG, et al.* | : | Case No. 02-0141 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DENY CLASS CERTIFICATION AND ENTER JUDGMENT AGAINST PLAINTIFF**

Defendants move for an order denying class certification in the action brought by plaintiff Loren Kofsky, who seeks relief (including medical monitoring) on behalf of a putative nationwide economic loss class. *See In re Old Kent Mortgage Co. Yield Spread Premium Litig.*, 191 F.R.D. 155, 162 (D. Minn. 2000) (recognizing that "[a]ny party may move for a class determination under Rule 23(c)(1)"); Pretrial Order ("PTO") 4 § IV.E (requiring plaintiffs to file motions and supporting briefs seeking class certification in 2002).[1] This Court already has denied certification of economic loss and medical monitoring classes because of the predominance of individual issues. *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 211-14 (D. Minn. 2003). The facts of this case

[1] *See also Thompson v. Merck & Co.*, Nos. C.A. 01-1004, *et al.*, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) (granting motion to strike before plaintiff had moved to certify because it was "clear" plaintiff could not satisfy Rule 23 and "[n]o amount of additional class discovery will alter this conclusion"); *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004) (recognizing that a motion to strike can be used to "test the viability of a class at the earliest pleading stage of the litigation") (collecting cases). *See generally Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982) ("[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim").

merely confirm the correctness of that ruling. Furthermore, plaintiff is not an adequate class representative and does not assert claims typical of the absent class members he purports to represent. *See infra*, Argument, Part I.B.

Defendants also move for judgment on each of plaintiff's individual claims on four separate grounds:

- Bayer warned of the exact side effects that plaintiff alleges that Baycol caused, and therefore, under California law, he cannot maintain an action based upon an alleged failure to warn. *See infra*, Argument, Part II.A.[2]

- Plaintiff has no recollection of an advertisement for Baycol and has not produced evidence of a false advertisement about Baycol. His false advertising claims thus fail. *See infra*, Argument, Part II.B.

- Plaintiff's Consumer Legal Remedies Act ("CLRA") claim must be dismissed because he did not comply with a statutory pre-filing notice requirement. *See infra*, Argument, Part II.C.

- Medical monitoring is not a cognizable claim under California law, and plaintiff cannot recover medical monitoring as a form of damages, because he lacks the requisite case-specific expert testimony. *See infra*, Argument, Part II.D.

Therefore, this Court should enforce and reaffirm its master class certification ruling by denying certification of this putative class action, and enter summary judgment against plaintiff Loren Kofsky as to his individual claims.

---

[2] As this Court has held, "federal courts apply the choice of law rules of the forum state" (in this case California) to substantive issues. *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 207 (D. Minn. 2003). Plaintiff is a California resident who was prescribed Baycol in California, took Baycol in California, and was allegedly injured in California. Under California choice of law rules, California substantive law governs his claims and other substantive issues in this action. *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 920-21 (2001); *In re Baycol Prods. Litig.*, 218 F.R.D. at 207.

## STATEMENT OF FACTS

## I. BAYCOL THERAPY REDUCED PLAINTIFF'S CHOLESTEROL.

Plaintiff Loren Kofsky has a history of high cholesterol dating to before 1995. *See* Kofsky Medical Records (Ex. A) SCGH000011-13lwk. Until December 1999, however, plaintiff refused to take a cholesterol-lowering medication, and instead attempted to control his elevated cholesterol through diet and exercise alone. *See id.*, at SCGH000016lwk. On December 13, 1999, plaintiff's laboratory results showed that his cholesterol levels were "too high" with total cholesterol at 279 (normal = < 200) and LDL at 189 (normal = < 160). *Id.*, at MM000019lwk.

Given plaintiff's "family history and [his] personal risk factors for heart disease," Dr. William MacMaster recommended that plaintiff take a cholesterol-lowering medication. *Id*. Dr. MacMaster prescribed the statin Zocor in January 2000. *See id.*, at WM000004lwk. Blood tests six months later, in June 2000, showed that plaintiff's cholesterol levels had climbed even higher, with his total cholesterol at 317 (normal = 120-200), LDL at 226 (normal = 62-185) and triglycerides at 207 (normal = 10-150). *Id.*, at WM000013lwk.

As a result, on June 30, 2000, Dr. MacMaster switched plaintiff from Zocor to 0.4 mg Baycol, which plaintiff took until March 2001. *Id.*, at WM00003lwk, MM000002lwk; Expert Report of Michael F. Maywood, M.D. (Ex. B) ¶ 8.a. Within two months of initiating Baycol therapy, plaintiff's cholesterol levels showed a "good response to Baycol" and fell to within normal ranges. Kofsky Medical Records (Ex. A) at WM000002lwk. Specifically, on August 22, 2000, plaintiff's total cholesterol was 179

(normal = 120-200), LDL was 103 (normal = 62-185), and triglycerides were 115 (normal = 10-150). *Id*., at WM0000012lwk.

In December 2000, plaintiff began to report bilateral arm pain, which his doctors attributed to "overuse syndrome" caused by weight lifting and playing the drums. *Id*., at WM000001lwk. On March 26, 2001, Dr. Michael Maywood noted that plaintiff had discontinued taking Baycol on his own because plaintiff thought it was causing pain in his forearms and thighs. *Id*., at MM00002-3lwk.

Dr. Maywood prescribed another statin, Lipitor, to replace Baycol on April 23, 2001. *Id*. Lipitor, like Zocor, did not adequately control plaintiff's cholesterol levels. By July 2001, plaintiff's cholesterol levels were elevated once again, with his total cholesterol up to 221 (normal = 100-199) and triglycerides at 155 (normal = 30-150). *Id*., at MM000012lwk. Moreover, plaintiff's liver enzyme levels at that time exceeded three times normal with a SGPT of 114 (normal = 0-40) and SGOT of 46 (normal = 0-40). *Id*.[3] Dr. Maywood decided to "discontinue Lipitor" as "SGPT [was] approaching 3x normal." *Id*., at MM00004lwk.

In October 2001, plaintiff started yet another statin, Pravachol, in an effort to control his cholesterol levels. *Id*., at MM00007lwk. By January 2002, however,

---

[3] SGPT (serum glutamate pyruvate transaminase) and SGOT (serum glutamic-oxaloacetic transaminase) are liver enzymes alternatively referred to as ALT (alanine transaminase) and AST (asparatate aminotransferase), respectively. The test for these liver enzymes "is used primarily to diagnose and monitor the course of liver disease." *See* Medline, at http://www.nlm.nih.gov/medlineplus/ency/article/003472.htm and http://www.nlm.nih.gov/medlineplus/ency/article/003473.htm (last visited March 27, 2007).

plaintiff discontinued Pravachol because of an elevation of his ALT, suggestive of liver problems. *Id*., at MM00008-9lwk.[4]

## II. PLAINTIFF'S INDIVIDUAL CLAIMS AND THE CLASS ALLEGATIONS.

Plaintiff filed this putative class action on October 22, 2001, alleging six claims: violations of (1) California's Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq*.), (2) California's unfair competition statute (Bus. & Prof. Code §§ 17200 *et seq*.), and (3) California's unfair advertising statute (Bus. & Prof. Code §§ 17500 *et seq*.); and common law claims of (4) breach of implied warranty, (5) fraudulent concealment, and (6) medical monitoring.

Plaintiff allegedly experienced muscle pain and increased liver enzymes as a result of taking Baycol. Deposition of Loren Kofsky (Ex. C) at 75:18-24, 128:4-17. Plaintiff purports to bring this action individually and on behalf of putative statewide and nationwide classes of plaintiffs who "purchased and/or used the prescription drug Baycol for personal, family, or household purposes ('the Class') commencing from January 1, 1997 to August 8, 2001." Compl. ¶ 8. However, the Complaint expressly disclaims recovery for personal injuries. *Id*. Rather, it seeks damages for economic losses, including, *inter alia*, the refund of purchase costs, compensatory damages, and medical monitoring. *Id*., at Prayer for Relief. Although the Complaint asserts false advertising

---

[4] Plaintiff submitted a PTO 114 expert report from Dr. Maywood, which should be excluded because plaintiff refused to produce Dr. Maywood for deposition. On November 9, 2006, Bayer filed a Motion for Discovery Sanctions for noncompliance with PTO 149, seeking dismissal of this case. That motion is fully briefed and pending before this Court.

claims, at his deposition, plaintiff could not recall seeing any advertisement for Baycol. *See* Kofsky Dep. (Ex. C) at 145:10-13.

**ARGUMENT**

**I. CLASS CERTIFICATION SHOULD BE DENIED.**

Class certification is inappropriate and should be denied. Only if plaintiff could establish all of the requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and demonstrate that a class could be maintained under Rule 23(b)(3) – by proving that common issues of fact and law predominate and that class litigation is superior – could a class be certified. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Plaintiff cannot do so here because, among other things:

- The claims in this case raise predominantly individual questions of fact and law. Indeed, this Court and numerous other courts have rejected certification of similar economic loss and medical monitoring classes due to the predominance of individual issues. *See In re Baycol Prods. Litig.*, 218 F.R.D. at 213-14.

- Plaintiff is not typical of, or an adequate representative for, the absent class members. *See id.* at 205-06, 211, 214.

For each of these reasons, the Court should deny class certification.

**A. Individual Issues Predominate.**

As this Court has previously ruled, product liability class actions such as this one are inappropriate for certification due to the predominance of individual issues. *In re Baycol Prods. Litig.*, 218 F.R.D. at 213-14. That decision was and is consistent with the great weight of authority. *See, e.g.*, *Zehel-Miller v. Astrazenaca Pharms., LP*,

223 F.R.D. 659, 663-64 (M.D. Fla. 2004) (denying certification of refund and medical monitoring classes as "manifestly inappropriate"); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61 (S.D.N.Y. 2002) (rejecting refund and medical monitoring classes); *In re Phenylpropanolamine ("PPA") Prods. Liab. Litig.*, 208 F.R.D. 625 (W.D. Wash. 2002) (rejecting injury, risk of injury, fear of injury, and refund classes). "To date, no Court of Appeals decision has approved class certification of an action involving prescription drugs." *Sweet v. Pfizer*, 232 F.R.D. 360, 372-73 (C.D. Cal. 2005) (*quoting In re Baycol Prods. Litig*., 218 F.R.D. at 204). The Court therefore should reaffirm its prior ruling and reject this putative class.

**1. Individual issues predominate for an economic loss class.**

The economic loss claims here are no different from others held to be inappropriate for class treatment due to the predominance of individual issues. *Sweet*, 232 F.R.D. at 372-73; *Zehel-Miller*, 223 F.R.D. at 664; *In re Baycol Prods. Litig.*, 218 F.R.D. at 214; *Rezulin*, 210 F.R.D. at 66-68; *PPA*, 208 F.R.D. at 633.

To recover the purchase price of Baycol, plaintiff "would have to demonstrate that [he and absent class members] were either injured by Baycol, or that Baycol did not provide them any health benefits." *See In re Baycol Prods. Litig.*, 218 F.R.D. at 213-14; *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 338-39 (1998) (dismissing UCL claim because plaintiffs "received *exactly what they paid for*" (emphasis in original)); *Dunkin v. Boskey*, 82 Cal. App. 4th 171, 198 (2000) (recognizing right to "offset" benefits provided against unjust enrichment claim); *Intervention, Inc. v. Warner-Lambert Co.*, Judicial Council Coordinated Proceeding No. 4122 (*In re Rezulin Litig.*),

Case No. C-01-0977, Order at pp. 8-9 (April 29, 2003) (Ex. D) (dismissing unfair competition claim because plaintiffs did not prove drug was ineffective or harmful).[5] But the "question whether an individual member got his or her money's worth" or was injured "is inherently individual." *Rezulin*, 210 F.R.D. at 69. Among other things, one would need to examine a person's medical history, determine the dosage(s) and period(s) of Baycol therapy, identify pre-existing conditions, consider possible drug-drug interactions, rule out alternative causes, determine cholesterol levels before, during, and after Baycol use, and factor in diet and exercise. *See Rezulin*, 210 F.R.D. at 68-69; *PPA*, 208 F.R.D. at 631.

Similarly, proof of causation and/or reliance is individual California's unfair competition law, false advertising law, and Consumer Legal Remedies Act ("CLRA") require proof of an "injury in fact" or "damages" that occurred "as a result" of wrongful misconduct. *See* Cal. Bus. & Prof. Code § 17204; Cal. Civ. Code § 1780(a). Courts in California and across the country have construed the phrase "as a result" to mean that proximate "causation is a necessary element of proof." *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal. App. 4th 746, 753-54 (2003); *see also, e.g., Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002). Breach of warranty and fraud claims also require proof of causation or reliance. *Scott v. Metabolife Int'l, Inc.*, 115 Cal. App. 4th 404, 415-16 (2004) (causation of injury an element of breach of warranty claim);

[5] *Intervention* was decided before a November 2004 amendment to California law, which *increased* the standing requirements for unfair competition and false advertising claims to require proof of "an injury in fact … as a result of" wrongful conduct. Cal. Bus. & Prof. Code §§ 17203, 17204. These amendments apply to pending actions. *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006).

*Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (reliance an element of fraud or deceit claim). Proof of causation or reliance is particularly complicated here because the duty regarding warning about the risks of a prescription medication runs to physicians, who exercise independent judgment and act as learned intermediaries for patients. *See Carlin v. Superior Court*, 13 Cal. 4th 1104, 1116 (1996) (duty to warn "runs to the physician, not to the patient"); *Brown v. Superior Court*, 44 Cal. 3d 1049, 1069 (1988). Plaintiff would need to prove that "the physicians would not have prescribed" Baycol if they had received different or additional warnings. *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 321 (5th Cir. 2002). This additional inquiry into the judgment and knowledge of each prescribing physician demonstrates yet again why individual issues predominate. *Rezulin*, 210 F.R.D. at 66-67; *Delaney v. Warner-Lambert Co.*, Judicial Council Coordinated Proceeding No. 4122 (*In re Rezulin Litig.*), Case No. BC227414, Order at pp. 6-10 (Cal. Super. Ct. Jan 15. 2002) (Ex. E) (denying certification of California class in part because of "individual analysis" needed to prove "reliance" by each prescribing physician).

Plaintiff's own claims illustrate the inherently individualized nature of the inquiry and the correctness of this Court's prior ruling denying certification.

- Plaintiff alleges that he took 0.4 mg Baycol for approximately nine months, and that Baycol caused elevated liver enzymes and muscle pain. Kofsky Dep. (Ex. C) at 75:18-24, 128:4-17; Maywood Expert Report (Ex. B) ¶¶ 8.a, 11, 12.a. Absent class members took different doses of Baycol for different periods of time and reported different symptoms at different points in time after initiating (or ceasing) Baycol therapy. *See In re Baycol Prods. Litig.*, 218 F.R.D. at 205-06.

- After discontinuing Baycol, plaintiff took two other statins, Lipitor and Pravachol, each of which was discontinued due to abnormal liver function tests. Kofsky Medical Records (Ex. A) at MM00002, 4, 7-9lwk. These other statins are potential alternative causes for plaintiff's alleged injury. Absent class members will have different medical histories and will have taken different medications concurrently. Those different histories and medications could explain some or all of their symptoms. *See PPA*, 208 F.R.D. at 631; *Sweet*, 232 F.R.D. at 368-69.

- Baycol may or may not have worked as effectively for other persons as it did for plaintiff, who had a "good response to Baycol" within two months of initiating Baycol therapy. Kofsky Medical Records (Ex. A) at WM000002, 12lwk.

Moreover, the economic loss claims of the putative nationwide class are governed by the laws of all fifty states. *In re Baycol Prods. Litig.*, 218 F.R.D. at 207-08. The differences in state laws alone would "swamp any common issues and defeat predominance." *Id.*, at 208 (internal quotations omitted). Where, as here, a nationwide putative class involves the laws of all fifty states, it "only compounds" the predominance of individual issues. *Rezulin*, 210 F.R.D. at 69-71.

These and innumerable other differences among the claims of absent class members explain why courts reject certification of economic loss classes in prescription pharmaceutical cases. *Sweet*, 232 F.R.D. at 372-73; *Zehel-Miller*, 223 F.R.D. at 664; *In re Baycol Prods. Litig.*, 218 F.R.D. at 214; *Rezulin*, 210 F.R.D. at 66-68; *PPA*, 208 F.R.D. at 633; *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999) ("the claim of unjust enrichment is packed with individual issues and would be unmanageable"); *Delaney*, Order at pp. 6-10 (Ex. E) (denying certification of economic loss class under California's unfair competition law and Consumer Legal Remedies Act). Asserting economic loss claims on behalf of a California-only class would not salvage these class

allegations because individual issues still would predominate. *See Sweet*, 232 F.R.D. at 374-375; *Delaney*, Order at pp. 6-10 (Ex. E). The Court therefore should, once again, deny certification here.

**2. Individual issues predominate for a medical monitoring class.**

This Court has correctly determined that medical monitoring in and of itself "destroy[s] the cohesive nature of the class claims" because it requires a case-by-case analysis of the past and present medical history of each class member. *In re Baycol Prods. Litig.*, 218 F.R.D. at 211; *Zehel-Miller*, 223 F.R.D. at 663-64. "[E]ach plaintiff's need (or lack of need) for medical monitoring is highly individualized." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005) (reversing certification of medical monitoring class as abuse of discretion).

This is particularly true here. Under California law, medical monitoring relief is not available unless reliable case-specific expert testimony establishes it is a reasonably foreseeable consequence of exposure. *See Potter v. Firestone Tire & Rubber Co.* , 6 Cal. 4th 965, 1006 (1993). An expert must weigh, among other things, the significance and extent of a person's exposure, the seriousness of the diseases for which the person is at an increased risk, and the relative increase in that person's chances of developing a disease as compared to if the exposure had not occurred. *Id.*, at 1007.

Conducting such an inquiry for every Baycol user in the United States (or even just in California) between 1997 and 2001 would be impractical and unmanageable. *In re Baycol Prods. Litig.*, 218 F.R.D. at 214; *accord Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 652, 661 (M.D. Fla. 2001) (rejecting medical monitoring class as depending "upon

the varied circumstances of the class members' exposure and other factors"). The Court therefore should reaffirm its prior ruling and deny certification of this putative medical monitoring class due to the predominance of individual issues. *Id*.

**B. Plaintiff Is Not Typical Or Adequate.**

To be adequate, a party asserting claims on behalf of a putative class must demonstrate a willingness and ability to "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. Proc. 23(a); *In re Gen. Am. Life Ins. Co. Sales Practice Litig.*, 357 F.3d 800, 805 (8th Cir. 2004). The related requirement of typicality "determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (citation omitted); *accord Jones v. Allercare, Inc.*, 203 F.R.D. 290, 299-302 (N.D. Ohio 2001).

At a minimum, a person seeking to represent a class "must be part of the class and possess the same interest and suffer the same injury as the class members." *See Amchem*, 521 U.S. at 625 (internal alterations and quotations omitted). A person who claims to be "currently injured" cannot represent persons who experienced "exposure only" and do not allege present injuries. *See Amchem*, 521 U.S. at 625-626; *Foster v. St. Jude Med. Inc.*, 229 F.R.D. 599, 604 (D. Minn. 2005). Furthermore, when an "injury can only be determined on an individual basis," and "is tied to a complex course of conduct engaged in by the defendants over a long period of time," factual differences in the claims and defenses of the putative class mean that no one person's claims are "typical."

*In re Baycol Prods. Litig.*, 218 F.R.D. at 206. "The applicability of multiple substantive laws also precludes a finding of typicality." *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 460 (E.D. La. 2006).

Here, plaintiff is not typical of the proposed injury class, as his individual claims raise legal and factual issues distinct from those of absent class members. *See supra*, Argument, Part I.A.1. Plaintiff is similarly not adequate to represent a medical monitoring class because he lacks evidence that he is a typical medical monitoring plaintiff: his case-specific expert offers no opinion that plaintiff will require ongoing medical follow-up for any Baycol-related injury. Maywood Expert Report (Ex. B) ¶ 10.

In the end, plaintiff faces the same obstacle encountered by other plaintiffs in pharmaceutical products liability actions: his unique experiences on Baycol do not qualify him to represent a class of persons who also had unique experiences on Baycol. *In re Baycol Prods. Litig.*, 218 F.R.D. at 211; *accord Blain v. SmithKline Beecham Corp.*, 240 F.R.D. 179, 187-190 (E.D. Pa. 2007); *In re Vioxx*, 239 F.R.D. at 459-60. He thus cannot adequately represent, and his claims are not typical of, "all persons in California and the United States of America who purchased and/or used the prescription drug Baycol." Compl. ¶ 8.

For all of the foregoing reasons, the Court should deny certification due to the overwhelming predominance of individual issues, the lack of typicality, and the lack of adequacy.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S INDIVIDUAL CLAIMS.

After denying class certification, this Court should enter summary judgment against plaintiff for four independent reasons.

- Plaintiff's claims fail because the labeling warned of the exact side effects plaintiff alleges Baycol caused. *See Brown*, 44 Cal. 3d at 1069; *see also Barney v. St. Jude Med. Ctr.*, No. C-92-1058 DLJ, 1993 WL 13015619, at *6 (N.D. Cal. Feb. 12, 1993).

- Plaintiff cannot pursue claims predicated on false advertising because he has no evidence of a false statement made to him by Bayer.

- Plaintiff cannot pursue a CLRA claim because he failed to provide defendants with a mandatory pre-filing notice. Cal. Civ. Code § 1782.

- Plaintiff's medical monitoring claim fails because it is not a claim under California law and, in any event, is unsupported by case-specific expert evidence. *See Potter*, 6 Cal. 4th at 1007, 1009.

Because "there is no genuine issue as to any material fact," defendants are "entitled to judgment as a matter of law" on each and every one of plaintiff's individual claims. *CardioVention, Inc. v. Medtronic, Inc.*, 430 F. Supp. 2d 933, 938 (D. Minn. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994)).

### A. Baycol Is Entitled to Judgment on Plaintiff's Common Law Claims Because Baycol's Warnings Were Adequate As a Matter of Law.

The Baycol labeling is adequate as a matter of law because it specifically warned about the very side effects that Mr. Kofsky claims to have experienced as a result of using Baycol – muscle pain and increased liver enzymes. *See Brown*, 44 Cal. 3d at

1069. Defendants are entitled to judgment because each of Mr. Kofsky's claims depend upon an alleged inadequacy in the warnings for Baycol. Compl. ¶¶ 22-58.

Under California law, a defendant is not "liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities." *Brown*, 44 Cal. 3d at 1069; *see also Carlin*, 13 Cal. 4th at 1112-13. By definition, a drug warning is adequate if it discloses the "precise risk encountered by [the] plaintiff." *See Barney*, 1993 WL 13015619, at *7 (granting summary judgment because warning disclosed of risk).

These basic principles have been reaffirmed in numerous products liability actions. For example, in *Barney*, a plaintiff experienced impeded leaflet motion in a mechanical heart valve, and the valve had to be replaced. The manufacturer's labeling specifically warned of, and the prescribing doctor was aware of, the risk of impeded leaflet motion and associated heart failure, which could require reoperation. *Id*. at *5-6. Because the manufacturer advised the plaintiff's physician of "the precise risk encountered by plaintiff," the warnings were adequate as a matter of law. *Id*. at *4, *7. Accordingly, the court granted summary judgment in favor of the manufacturer and dismissed all of the plaintiff's claims based on the adequacy of the warnings. *Id*.[6]

---

[6] In contrast, in *Hufft v. Horowitz*, 4 Cal. App. 4th 8 (1992), a plaintiff who received a penile implant suffered from spontaneous, continuous erection. The court found an issue of fact existed as to the adequacy of the warnings because the defendant's general warning – *i.e.*, "surgical, physical, psychological, or mechanical complications" may occur, including "malfunction of the pumping mechanism or cylinder, tubing kinks, and leakage of fluids" – did not "contain any specific warning" "of the injury encountered by [plaintiff]" a "spontaneous, continuing erection." *See id*. at 21-23.

Here, Baycol's labeling was adequate because it always warned of the exact side effects that plaintiff allegedly experienced – muscle pain and increased liver enzymes. *See Barney,* 1993 WL 13015619, at *7.[7] The Baycol labeling clearly disclosed these potential side effects. *See* Baycol Package Inserts 12/99 and 7/00 (Exs. F and G) (disclosing risk that Baycol may cause "myalgia," "myopathy," "muscle aching," "muscle pain," "muscle cramps," and "liver transminase elevations"). The labeling for Baycol also told physicians that Baycol "therapy should be discontinued if myopathy is diagnosed or suspected," and that "should an increase in AST or ALT of three times the upper limit of normal or greater persist," then withdrawal of Baycol "is recommended." *Id*. These warnings were approved by the FDA, which determined that Baycol was "safe and effective" for use as recommended in the labeling, and were clear and direct. FDA Approval Letters (Exs. H and I).

Because the label for Baycol warned of the precise side effects Mr. Kofsky allegedly experienced, Mr. Kofsky did not suffer an "injury in fact . . . as a result of" any wrongful conduct, and defendants did not acquire anything from Mr. Kofsky "by means of" unfair competition, that could support an award of restitution.[8] *See* Bus. & Prof. Code §§ 17203; 17204; *Midpeninsula Citizens for Fair Housing v. Westwood Investors*,

---

[7] Because plaintiff's own theories about medical causation are incompetent, and Dr. Maywood's opinion (assuming *arguendo* that it is admissible) is limited to muscle pain and increased liver enzymes, the only relevant warnings for purposes of this action are those for muscle pain and increased liver enzymes. *See Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002); *Cottle v. Superior Court*, 3 Cal. App. 4th 1367, 1384 (1992).

[8] Restitution is the only monetary relief available under sections 17200 and 17500. *See* Bus. & Prof. Code § 17203; *Krause v. Trinity Mgmt. Svcs., Inc.*, 23 Cal. 4th 116, 137 (2000).

221 Cal. App. 3d 1377, 1393 (1990). Moreover, plaintiff cannot recover injunctive relief under these claims because there is no "threat of continuing misconduct" – Baycol was voluntarily withdrawn from the market more than five years ago. *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 463 (2005). Accordingly, plaintiff is not entitled to any relief as a matter of law on his economic loss claims.

Plaintiff's fraudulent concealment and implied warranty claims fail for the same reason. *Brown*, 44 Cal. 3d at 1072 (adequate warnings defeat claims for breach of warranty, express or implied); *accord Valentine v. Baxter Healthcare Corp.*, 68 Cal. App. 4th 1467, 1480-81 (1999) (strict liability and neglience claims); *Rivas v. Safety-Kleen Corp.*, 98 Cal. App. 4th 218, 229 (2002) (fraud claim); *Motus v. Pfizer, Inc.*, 196 F. Supp. 2d 984, 999 (C.D. Cal. 2001) (fraud claim), *aff'd*, 358 F.3d 659 (9th Cir. 2004); *In re: Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 819-21 (N.D. Ohio 2004) (fraud and misrepresentation claims) (applying California law).

Consequently, these warnings are adequate as a matter of law, plaintiff cannot recover for his alleged injuries, and defendants are entitled to summary judgment. *Brown*, 44 Cal. 3d at 1069; *Barney*, 1993 WL 13015619, at *7.

**B. Bayer Did Not Engage In False Advertising.**

Plaintiff's CLRA, unfair competition, unfair advertisement, breach of implied warranty, and fraudulent concealment claims (the "misrepresentation claims") assume that defendants made false or misleading statements about Baycol. To prevail on any of these misrepresentation claims, plaintiff must establish the existence of a false or misleading advertisment to him by defendants. *See Comm. on Children's Television,*

*Inc., v. Gen. Foods Corp.*, 35 Cal. 3d 197, 209-10 (1983) (requiring evidence of an advertisement that was likely to deceive for unfair competition and unfair advertising claims); Cal. Com. Code § 2313(1)(a) (requiring an affirmation of fact or promise by seller for implied warranty claim); Cal. Civ. Code §§ 1709, 1710 (requiring suppression of fact or affirmative misrepresentation for fraud); Cal. Civ. Code § 1770(a)(5), (a)(7) (requiring representation for CLRA claim). Plaintiff, however, has no evidence of false or misleading statements. Indeed, plaintiff had no recollection whatsoever of any Baycol advertisement, false or otherwise. Kofsky Dep. (Ex. C) at 145:10-13. This is not surprising because Bayer never advertised Baycol directly to consumers. *See* Bayer's Verified Responses to Requests to Admit Facts (Ex. J) in *DeBouse v. Bayer A.G.*, No. 04-L-53, Supplemental Answer 20-21, at p.6 (St. Clair County Cir. Ill., 2005); *see also* Deposition of Carol Clark (Ex. K), *In re Texas 8th Regional Baycol Litig.*, No. 17-192700-02, (Vol. 2) 427:3-10. Defendant thus is entitled to summary judgment on the misrepresentation claims for this further reason as well.

**C. Plaintiff Cannot Pursue A CLRA Claim.**

Plaintiff's CLRA claim also fails because he cannot prove a necessary element to recover either damages or injunctive relief. A consumer cannot recover damages under the CLRA without first serving a pre-filing notice and providing an opportunity to cure the alleged violation(s). Cal. Civ. Code § 1782. Specifically, a consumer must:

> (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violation of Section 1770; and

> (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.

Cal. Civ. Code § 1782(a).

California courts routinely dismiss CLRA claims for non-compliance with the pre-filing notice requirement. *See In re Baycol Cases*, Judicial Council Coordinated Proceedings 4217, Order (Cal. Super. Ct. May 30, 2003) (striking claims for damages under the CLRA) (Ex. L); *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 40-41 (1975) (rejecting any theory of "substantial compliance" with the CLRA's pre-filing notice requirement); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005) (dismissing CLRA claim with prejudice); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1303-04 (S.D. Cal. 2003) (dismissing CLRA claim with prejudice).

Furthermore, plaintiff cannot pursue injunctive relief under the CLRA (or any of his claims) because there is nothing to enjoin. "[W]hen as here, the assertedly wrongful practice has ended . . . its requested termination is a rather empty prayer." *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1022 (2005) (internal quotations omitted) (dismissing request for injunctive relief at the pleading stage). "Injunctive relief is appropriate only when there is a threat of continuing misconduct." *Madrid*, 130 Cal. App. 4th at 463 (dismissing request for injunctive relief); *accord Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 574 (1995). Baycol was voluntarily withdrawn from the market more than six years ago, and there is no evidence that it will be reintroduced. Plaintiff thus has no basis for obtaining injunctive relief.

Because plaintiff cannot obtain any relief under the CLRA, this claim should be dismissed as a matter of law.

**D. Plaintiff's Medical Monitoring Claim Is Not Viable.**

Plaintiff's complaint includes a claim for "medical monitoring." Under California law, medical monitoring "is not a separate tort but simply an item of damages." *See San Diego Gas & Elec. Co. v. Superior Court*, 13 Cal. 4th 893, 914 n.18 (1996); *Potter*, 6 Cal. 4th at 1007. For this reason alone, Bayer is entitled to judgment on this claim.

But even if medical monitoring were a stand-alone claim under California law, plaintiff's claim here still would fail as a matter of law. Plaintiff cannot be awarded medical monitoring damages under California law unless a case-specific expert opines:

> that the need for monitoring is a reasonably certain consequence of the exposure, based upon a consideration of at least the following five factors: (1) the significance and extent of the plaintiff's exposure to the chemicals; (2) the relative toxicity of the chemicals; (3) the seriousness of the diseases for which plaintiff is at an increased risk; (4) the relative increase in the plaintiff's chances of developing a disease as a result of the exposure, when compared to (a) plaintiff's chances of developing the disease had he or she not been exposed, and (b) the chances of members of the public at large of developing the disease; and (5) the clinical value of early detection and diagnosis.

*Potter*, 6 Cal. 4th at 1006.

Plaintiff has not provided and cannot provide the opinions needed to satisfy any of the *Potter* factors. Plaintiff's PTO 114 expert report – which should be excluded – does not address these issues (Maywood Expert Report (Ex. B)) and plaintiff did not

supplement that report or present Dr. Maywood to testify. *See Potter*, 6 Cal. 4th at 1006, 1009; *Lockheed Martin Corp. v. Superior Court*, 29 Cal. 4th 1096, 1111 (2003). Plaintiff therefore cannot recover medical monitoring damages, and his purported medical monitoring claim should be dismissed.

**CONCLUSION**

For these reasons, defendants respectfully request that the Court deny class certification, and enter summary judgment in its favor and against plaintiff Loren Kofsky on his individual claims.

Dated: November 30, 2007

Respectfully submitted,

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Catherine Valerio Barrad
Christine K. Son
Nitin Reddy
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
(213) 896-6000

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

Douglas R. Marvin
WILLIAMS & CONNOLLY
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

*Counsel for Bayer Corporation and Bayer AG*